IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| DOUGLAS SORENSEN, | ) |
|     Plaintiff, | ) ) ) |
| v. | ) No. 1:11-CV-307-CLC-CHS |
| CITY OF CALHOUN, TENNESSEE | ) ) ) |
|     Defendant. | ) ) |

## REPORT and RECOMMENDATION

### I. Introduction

Plaintiff, Douglas Sorensen, moves for attorney fees and costs pursuant to 38 U.S.C. § 4323(h)(2) and 38 U.S.C. § 4323(d)(3) as the prevailing party on his claims brought under the Uniformed Services Employment and Reemployment Rights Act (USERRA), 38 U.S.C. §§ 4311 and 4316(c) [Docs. 61 & 71]. These motions are before the undersigned Magistrate Judge having been referred for a report and recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). Plaintiff seeks $69,646.50 in attorney fees, $1,390.40 in costs, and prejudgment interest. For the reasons stated herein, it is RECOMMENDED that Plaintiff's motions be GRANTED and that he be AWARDED $55,000.00 in attorney fees and $1,390.40 in costs, and that his request for prejudgment interest be DENIED.

### II. Background

In his Complaint, Plaintiff alleged that, in 2009, while employed as a police officer with the City of Calhoun, Tennessee (the City), the City subjected him to unlawful discrimination after Plaintiff notified the City of an upcoming military deployment with the United States Army National Guard by immediately placing Plaintiff on leave without pay two

1

weeks before his deployment was to take place. In response, Plaintiff filed a claim under USERRA with the United States Department of Labor, Veterans' Employment and Training Service (VETS). In January 2010, prior to Plaintiff's return from his deployment on July 17, 2010, Plaintiff and the City settled the claim filed with VETS. However, according to Plaintiff, when he notified the City in early July 2010 that he was returning from deployment and that he intended to return to work, the City retaliated against him for filing the claim with VETS by refusing to return him to work promptly, requiring him to undergo an unlawful psychological examination as a condition of reemployment, demoting him from the rank of sergeant to patrolman, and discharging him for his refusal to undergo the unlawful psychological examination.

Plaintiff then brought an action under USERRA in this Court, *Sorensen v. City of Calhoun*, Docket No. 1:10-cv-214, alleging that the City retaliated against him for exercising his rights under USERRA by refusing to promptly reemploy him, requiring him to undergo an unlawful psychological examination as a precondition to reemployment, demoting him from the rank of sergeant to patrolman, and discharging him for refusing to undergo the unlawful psychological examination. In November 2010, the parties settled this USERRA claim for $15,497.81 and an agreement that Plaintiff would be reemployed.

In the instant action, Plaintiff alleged that following his reemployment, he was subjected to open hostility and unfair treatment which culminated in his discharge on July 12, 2011. Plaintiff asserted three claims in this action: 1) the City violated USERRA, 38 U.S.C. § 4311(b), by discharging Plaintiff in retaliation for Plaintiff's two previous USERRA claims; 2) the City violated USERRA, 38 U.S.C. § 4311(b), by creating a hostile work environment in retaliation for Plaintiff's two previous USERRA claims; and 3) the City violated USERRA, 38

U.S.C. §4316(c), by discharging Plaintiff without cause within one year of the date he was reemployed by Defendant. In addition to compensatory damages, Plaintiff also sought pursuant to USERRA, 28 U.S.C. § 4323(d)(1)(C), liquidated damages in an amount equal to his lost wages and benefits for the City's alleged willful conduct.

On August 14, 2014, the jury rendered a verdict in the amount of $8,300 in compensatory damages in favor of Plaintiff on all three of his USERRA claims – retaliation, hostile work environment, and "for cause" termination. The jury did not, however, award Plaintiff any liquidated damages. As the prevailing party, Plaintiff now moves for an award of attorney fees, pre-judgment interest, and litigation costs.

### III. Discussion

#### A. Standard for Awarding Attorney Fees

Generally, federal courts in the United States follow the American Rule whereby each party bears his or her own attorney's fees no matter what the outcome of the case. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 n. 2 (1983); *Mihalik v. Pro Arts, Inc.*, 851 F.2d 790, 793 (6th Cir. 1988). An exception arises where a prevailing party has a statutory right to attorney fees. *See Hensley*, 461 U.S. at 433 n. 2 (discussing statutory exceptions to the American Rule).

The fee shifting provision of USERRA, 38 U.S.C. § 4323(h)(2), provides that a court "may award" a plaintiff who has prevailed in an action to enforce his rights under USERRA "reasonable attorney fees, expert witness fees, and other litigation expenses." Liquidated damages in an amount equal to lost wages and benefits may be awarded by the court for the employer's willful conduct. 38 U.S.C. § 4323(d)(1)(C). Claims for attorney fees pursuant to USERRA have been analyzed under the same framework applicable to other federal fee shifting statutes. *See e.g, Hance v. Norfolk S. Ry. Co.*, 2007 WL 3046355 (E.D. Tenn. Oct. 16, 2007).

3

"'The primary concern in an attorney fee case is that the fee awarded be reasonable,' that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) (quoting *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999)); *Lavin v. Husted*, 764 F.3d 646, 649 (6th Cir. 2014) (same). A party seeking attorney fees under a federal fee shifting statute bears the burden to document the fees requested. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 617 (6th Cir. 2007); *Reed v. Rhodes*, 179 F.3d 453, 472 (6th Cir. 1999). The award of attorney fees is left to the district court's exercise of discretion within the appropriate parameters, which are discussed below. *See Hensley*, 461 U.S. at 437; *Reed*, 179 F.3d at 469 n.2.

The methodology for calculating attorney fees under a fee shifting statute is set forth in *Hescott v. City of Saginaw*, 757 F.3d 518, 526-27 (6th Cir. 2014):

> A starting point is to calculate "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." (This is known as the "lodestar" calculation.) The court should then exclude excessive, redundant, or otherwise unnecessary hours. Next, the resulting sum should be adjusted to reflect the "result obtained." This involves two questions: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?"

(quoting *Wayne v. Village of Sebring*, 36 F.3d 517, 531 (6th Cir.1994)). *See also, Hensley*, 461 U.S. at 433 (holding attorney fees for successful litigants under federal fee shifting statutes are calculated using the "lodestar" method of multiplying the number of hours reasonably expended by a reasonable hourly rate.) The reasonableness of the hours expended and the attorney's hourly rate must be considered on a case-by-case basis. *Hensley*, 461 U.S. at 429. There is a strong presumption that the amount of fees determined by the lodestar method is reasonable. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986),

*Building Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995).

When considering the second step in the methodology used to calculate fees, taking into account the results obtained by the prevailing party, proportionality may be a factor. One type of proportionality is that between the number of claims upon which the plaintiff prevailed and the number of claims upon which the plaintiff did not prevail. Another is proportionality between the amount of attorney's fees sought and the amount of damages awarded.

*Hensley* instructs that courts should not reduce fees simply because a plaintiff has not prevailed on all claims. 461 U.S. at 434-37; *Hescott v. City of Saginaw*, 757 F.3d 518, 527 (6th Cir. 2014) ("We have repeatedly rejected mechanical reductions in fees based on the number of issues on which a plaintiff has prevailed.") (quoting *De ja Vu, Inc. v. Metro. Gov't of Nashville & Davidson Cnty, Tenn.*, 421 F.3d 417, 423 (6th Cir. 2005); *Green Party of Tennessee v. Hargett*, 767 F.3d 533, 553 (6th Cir. 2014) ("In no case should a court reduce the full fee award 'simply by using a ratio of successful claims to claims raised.'") (quoting *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 822 (6th Cir. 2013)).

Rather, the court should consider whether work performed for one or more unsuccessful claims can also apply to successful claim(s). Where a plaintiff's claims involve "a common core of facts" or are based on "related legal theories, . . . [m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Hensley*, 461 U.S. at 435; *see also, Jordan v. City of Cleveland*, 464 F.3d 584, 603 (6th Cir. 2006) (" . . . when claims 'involve a common core of facts' or are 'based on related legal theories,' the district court's rejection of certain grounds is not a sufficient reason for reducing a fee. There is no precise test for determining whether claims are related") (quoting

5

*Hensley*, 461 U.S. at 437)); *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1169 (6th Cir. 1996) ("When claims are based on a common core of facts or are based on related legal theories, for the purpose of calculating attorney fees they should not be treated as distinct claims, and the cost of litigating the related claims should not be reduced.")

The second type of proportionality concerns the ratio between damages awarded and fees sought. Where the purpose of the litigation is to recover damages, then the district court must consider the amount and nature of damages awarded when determining attorney fees. *Farrar v. Hobby*, 506 U.S. 103, 114-115 (1992) (citing *Hensley*, 461 U.S. at 436); *see also Cramblit v. Fikse*, 33 F.3d 633, 635 (6th Cir. 1994). "[D]istrict courts should exercise their equitable discretion in such cases [where plaintiffs have had only partial success] to arrive at a reasonable fee award, either by attempting to identify specific hours that should be eliminated or by simply reducing the award to account for the limited success of the plaintiff." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 789-90 (1989)); *see also*, *Hensley*, 461 U.S. at ("the district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.")

It is also important to observe, however, that, "[i]n the civil rights area there is no requirement that the amount of an award of attorney's fees be proportional to the amount of the underlying damages." *Grandview Raceway*, 46 F.3d at 1401 (citing *City of Riverside v. Rivera*, 477 U.S. 561 (1986) (upholding an award of attorney fees pursuant to 42 U.S.C. § 1988 for $245,456.25 where the underlying damages award was $33,350)). The Sixth Circuit reasoned in *Hescott v. City of Saginaw*, 757 F.3d 518, 525 (6th Cir. 2014),

> … [a]s the Supreme Court has explained, civil-rights plaintiffs "seek[ ] to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms." [*Rivera,* 477 U.S.] at 574, 106 S.Ct. 2686. Therefore, "Congress enacted § 1988 specifically to enable plaintiffs to enforce the civil rights laws

6

> even where the amount of damages at stake would not otherwise make it feasible to do so." *Id.* at 577, 106 S.Ct. 2686. A rule that eliminates attorneys' fees in civil-rights cases due to the size of the damages awarded "would seriously undermine Congress' purpose in enacting § 1988." *Id.* at 576, 106 S.Ct. 2686.

[Brackets added]; *accord, McHenry v. Chadwick*, 896 F.2d 184, 189 (6th Cir. 1990) (upholding award of attorney fees under § 1988 that were five times greater than the damages award because "the value of the rights vindicated goes beyond the actual monetary award and the amount of the actual award is not controlling"); *Clements v. Prudential Prot. Servs.,* LLC, 100 F. Supp.3d 604, 618 (E.D. Mich. 2015) (awarding $77,233.50 in attorney fees where plaintiff was awarded $31,000 in damages for FMLA claim); *Hoge v. Honda of America Mfg, Inc.*, 2003 WL 1338227 (S.D. Ohio Mar. 3, 2003) (unpublished) (awarding attorney fees of $18,212 where plaintiff was awarded $3,781 in damages for FMLA claim).[1]

Further, federal fee shifting statutes do not provide for enhancements of fees in order to compensate for the risk of nonpayment when an attorney takes a case on a contingency basis. *City of Burlington v. Dague*, 505 U.S. 557, 561-63 (1992); *Davis v. Mutual Life Ins. Co. of New York*, 6 F.3d 367, 381 (6th Cir. 1993).

It is also worth noting that a court is not required to comb through the attorney fee documentation with a magnifying class. As the Supreme Court stated in *Fox v. Vice*, 563 U.S. 826, __; 131 S.Ct. 2205, 2216 (2011):

---

[1] Factors sometimes enumerated when determining the lodestar amount and any adjustments are: "(1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Hensley*, 461 U.S. at 430 n.3 (quoting *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)); *Reed v. Rhodes*, 179 F.3d 453, 472 n.3 (citations omitted); *Clements*, 100 F. Supp.3d at 615.

7

> [w]e emphasize, as we have before, that the determination of fees "should not result in a second major litigation." *Hensley*, 461 U.S., at 437, 103 S.Ct. 1933. The fee applicant (whether a plaintiff or a defendant) must, of course, submit appropriate documentation to meet "the burden of establishing entitlement to an award." *Ibid*. But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.

Finally, "[a] district court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney." *Wayne v. Village of Sebring*, 36 F.3d 517, 533 (6th Cir. 1994). In determining the appropriate hourly rate to apply, courts must consider the prevailing market rate in the relevant community for the same type of work at issue. *Adcock-Ladd v. Sec'y of the Treasury*, 227 F.3d 343, 350 (6th Cir. 2000); *Reed*, 179 F.3d at 473; *Waldo v. Consumers Energy Co.,* 726 F.3d 802, 822 (6th Cir. 2013). The "'relevant community' for fee purposes [is] the legal community within that court's territorial jurisdiction." *Adcock-Ladd*, 227 F.3d at 350, *Waldo*, 726 F.3d at 821. The "'prevailing market rate' is that rate which lawyers of comparable skill and experience can reasonably expect to command within" the relevant community. *Id.* That rate may not, however, exceed the amount necessary to cause competent legal counsel to perform the work required. *Coulter v. Tennessee*, 805 F.2d 146, 148-49 (6th Cir. 1986); *see also Adcock-Ladd*, 227 F.3d at 349 ("'The primary concern in an attorney fee case is that the fee awarded be reasonable,' that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers.") (quoting *Reed*, 179 F.3d at 471)). "Such fees are different from the prices charged well-to-do clients by the most noted lawyers and renowned law firms in a region. Under these statutes a renowned lawyer who customarily receives $250 an hour in a field in which competent and experienced lawyers in the region normally receive $85 an hour

should be compensated at the lower rate." *Coulter*, 804 F.2d at 149, *accord Reed*, 179 F. 3d at 472.  In determining the correct hourly rate, a district court may "rely on a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests." *Waldo,* 726 F.3d at 821-22 (quoting *Van Horn v. Nationwide Prop. & Cas. Ins. Co.,* 436 Fed. Appx. 496, 499 (6th Cir.2011)).

    *B. Analysis*

        *1. Attorney Fees*

Plaintiff seeks attorney fees in the amount of $69,646.50.  Attorney Doug Hamill billed 204.90 hours at $285 per hour and paralegal Chad Hardeman billed 112.5 hours at $100 per hour.  Plaintiff observes that he prevailed on all his claims.

Defendant objects to the fees requested on four bases.  First, he asserts the time spent on the case by Plaintiff's counsel was excessive.  Defendant contends that because Plaintiff took only two depositions, no motion for summary judgment was filed, and "both the facts and the law of the case were straightforward," the number of hours billed was unreasonable [Defendant's Response at 2, Doc. 62].  Defendant further argues that many entries were too long for the specific task billed.  For example, Defendant finds opposing counsel's billing of 2.7 hours for a telephone conference with the client, reviewing the settlement demand, and reviewing the file to be excessive.  Defendant also finds Plaintiff's counsel's billing 91.6 hours for trial preparation to be unwarranted, especially since counsel only called three witnesses at trial.  Plaintiff disputes these contentions.  Plaintiff notes that because no motion for summary judgment was filed, the settlement demand required a significant amount of legal research and citations to authority to justify the demand; that the two witnesses deposed were key decision-makers requiring

9

significant preparation; and, although he only called three witnesses at trial, he had prepared five witnesses and made a strategic decision at trial to use only three.

Second, Defendant objects to Mr. Hamill's rate of $285 per hour, finding it to be overstated by at least $10 per hour. Defendant suggests that a rate of $225 per hour is more appropriate based on the affidavit of attorney Benjamen Lauderback whose practice, Plaintiff avers, is mainly insurance defense work. Mr. Hamill refers to the affidavits he has supplied from employment attorneys Kerry Knox and Justin Gilbert averring that the rate of $285 per hour in this locality is reasonable.

Third, Defendant objects to the amount of attorney fees sought given the damages award of only $8,300. Defendant argues that, even though Plaintiff prevailed on all his claims, Plaintiff had sought a total of $50,000 (i.e., $19,000 in back pay plus $6,000 in benefits, multiplied by two for liquidated damages), and he only received $8,300 from the jury; thus, the requested $69,649.50 is excessive. Plaintiff counters that the award he received is more than a nominal award, he was successful on all his claims, and his level of success makes the lodestar method a satisfactory method for determining fees.

Fourth and finally, Defendant notes that, while Plaintiff's counsel took this case on a contingency fee basis, under USERRA, Defendant bears the burden to show that Plaintiff was discharged for cause which, argues Defendant, redistributes some of the risk in litigating the case to Defendant.

Based on my own years of experience practicing law in Chattanooga, I find the hourly rate charged by Plaintiff's counsel to be reasonable. Further, I find that the number of hours Plaintiff's counsel invested in trial preparation and the trial itself is reasonable for a case of this nature, but that a small number of Plaintiff's counsel's narrative time entries were too vague to
10

allow the Court to make an informed decision as to whether such time entries were justified.  I find no other basis to reduce Plaintiff's attorney fees except for the disparity between the amount of damages sought and the lesser amount of damages awarded by the jury, as well as the attorney fees sought compared to the total damages award.  Accordingly, it is recommended that the fees award be reduced to $55,000 -- which is a little more than six and a half times the damages award of $8,300.  There is no dispute as to the amount of costs, and, thus, it is recommended that $1,390.40 in costs be awarded.  I decline to recommend that prejudgment interest be awarded as I find that the $55,000.00 award of fees and the $1,390.40 award of costs fairly compensates for Plaintiff's counsel for his work in this case.

## IV. Conclusion

For the reasons stated herein, it is RECOMMENDED that Plaintiff be AWARDED attorney fees in the amount of $55,000.00, costs in the amount of $1,390.40 and no prejudgment interest.[2]

s/*Christopher H. Steger*<br>UNITED STATES MAGISTRATE JUDGE

---

[2] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party.  Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure.  Failure to file objections within the time specified waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985).  The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general.  *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).